1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| K.F.,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br><br>     Defendant. | Case No. 20-cv-08629-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 14, 20 |

**INTRODUCTION**

The plaintiff K.F. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for social-security disability insurance benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgement, the Commissioner opposed the motion and filed a cross-motion for summary judgement, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings.

---

[1] Mot. – ECF No. 14. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 20; Reply – ECF No. 21.

ORDER – No. 20-cv-08629-LB

United States District Court
Northern District of California

**STATEMENT**

## 1. Procedural History

The plaintiff applied for social-security disability insurance benefits on May 21, 2018.[3] The Commissioner denied his claim on September 14, 2018, and again on December 20, 2018.[4] On January 29, 2019, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On July 8, 2020, the ALJ held a hearing and heard testimony from a vocational expert (VE) and the plaintiff.[6] The ALJ issued an unfavorable decision on July 22, 2020.[7] On October 30, 2020, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[8] The plaintiff filed this action on December 7, 2020, and the parties each moved for summary judgment.[9] All parties consented to magistrate-judge jurisdiction.[10]

## 2. Medical Records

The plaintiff contended that she was disabled because of the following conditions: anxiety, post-traumatic stress disorder, panic attacks, agoraphobia, depression, attention deficit hyperactivity disorder (ADHD), scoliosis, back pain, eczema, and psoriasis.[11] Records from the following individuals were submitted at the administrative hearing: (1) Paula Moreno, F.N.P., a treating nurse practitioner;[12] (2) Shannon Wozniak, P.N.P., a treating psychiatric nurse

United States District Court
Northern District of California

---

[3] AR 236–37.

[4] AR 100; AR 109.

[5] AR 115.

[6] AR 32–53.

[7] AR 15–25.

[8] AR 1–3.

[9] Compl. – ECF No. 1; Mot. – ECF No. 14; Cross-Mot. – ECF No. 20.

[10] Consents – ECF Nos. 8, 9.

[11] AR 268.

[12] AR 656–59; AR 664–67; AR 686–87; AR 697–98; AR 709–10; AR 725; AR 728–29.

practitioner;[13] (3) Soheila Benrazavi, M.D., an examining physician;[14] (4) Melody Samuelson, Psy.D., an examining psychologist;[15] and (5) A. Dipsea, M.D., G. Williams, M.D., Heather Abrahimi, Psy.D., and Lon Olsen, Ph.D., state non-examining medical consultants.[16] Because the plaintiff challenges the ALJ's consideration of the medical records, this order summarizes the disputed opinions fully.

### 2.1. Paula Moreno, F.N.P. — Treating Nurse Practitioner

NP Moreno was the plaintiff's primary-care provider and saw her several times between January 21, 2020 and May 21, 2020.

On January 21, 2020, the plaintiff complained of bilateral numbness and tingling in the arms for over a year, chronic rash, and joint pain. NP Moreno noted that a 2017 x-ray revealed anterolisthesis and disc space narrowing and that the plaintiff had painful range of motion in the bilateral shoulders and elbows. NP Moreno diagnosed the plaintiff with arthralgia, anesthesia of skin, anterolisthesis, and degenerative cervical disc disease, and referred the plaintiff to orthopedic surgery and rheumatology.[17]

On February 18, 2020, the plaintiff complained that, in addition to her previous symptoms, the arm numbness and tingling sensation caused constant sleep disturbances, she had constant itchiness and dry skin in her bilateral hands, and she had anxiety, depression and ADD. The plaintiff appeared teary-eyed and anxious. A January 2020 cervical x-ray revealed degenerative arthritis with large osteophytes. NP Moreno found patches of skin on the hands that were red, cracked and rough, and limited range of motion in the lower back. She diagnosed the plaintiff with anesthesia of skin, degenerative cervical disc disease, idiopathic scoliosis and kyphoscoliosis, and lumbar disc herniation with radiculopathy.[18]

---

[13] AR 471–76; AR 529; AR 531; AR 536; AR 539; AR 546; AR 551; AR 556; AR 563; AR 573; AR 584; AR 591; AR 669; AR 680; AR 685; AR 695; AR 708; AR 718; AR 723; AR 731; AR 733.

[14] AR 521–26.

[15] AR 513–20.

[16] AR 54–71; AR 73–88.

[17] AR 656–58; AR 686–87.

[18] AR 697–98.

United States District Court
Northern District of California

NP Moreno examined the plaintiff again on March 12, 2020, and diagnosed her with lichen sclerosis of female genitalia, psoriasis, eczema, and chronic pain.[19] The plaintiff again appeared teary-eyed and anxious. She reported that her sleep disturbances resolved with three Advil at night. Otherwise, her complaints were the same as before. NP Moreno referred the plaintiff to gynecology and rheumatology.[20]

Also on March 12, 2020, NP Moreno completed a residual functional capacity (RFC) questionnaire. She opined that the plaintiff can sit for one hour and thirty minutes at a time and less than two hours total in a workday, and stand for fifteen minutes at a time and about four hours in total a workday. She also opined that the plaintiff must walk every thirty minutes during a workday for ten minutes each time, needs to take unscheduled breaks daily (and then may not be able to return to work), and can lift and carry ten pounds frequently and twenty pounds occasionally. The plaintiff can occasionally twist, stoop, and climb ladders, can rarely crouch or squat, and has significant limitations with reaching, handling and fingering (specifically, she can reach with her right arm for less than ten percent of a workday and her left arm for eleven percent of a workday, can never grasp objects with her right hand or use the fingers of that hand for fine manipulations, and can grasp objects with her left hand and use that hand's fingers for fine manipulations for less than one percent of a workday). The plaintiff has the further limitations of anxiety, depression, neck pain with a tingling sensation to the bilateral arms and hands, itchiness in the arms, and eczema in the bilateral hands. Finally, the plaintiff is likely to be absent from work more than four days per month.[21]

On May 7, 2020, NP Moreno noted that the plaintiff last worked in 2015 as a nurse and had recently done odd jobs (that stopped due to COVID-19) such as driving a child to and from school and helping an old couple for three hours at a time. The plaintiff was able to perform certain tasks (such as gardening) not requiring interaction with others, due to her ADD, social anxiety,

---

[19] AR 351.
[20] AR 709–10.
[21] AR 664–67.

United States District Court
Northern District of California

depression, chronic pain, sleep problems, and eczema. NP Moreno diagnosed her with anesthesia of skin, degenerative cervical disc disease, and eczema.[22]

On May 21, 2020, the plaintiff was soon going to start a gardening job for a few hours per week. She was diagnosed with bilateral neck pain, paresthesia of skin, major depressive disorder, eczema, and lumbar disc herniation with radiculopathy.[23]

### 2.2. Shannon Wozniak, P.N.P. — Treating Psychiatric Nurse Practitioner

NP Wozniak treated the plaintiff for her mental-health problems from June 25, 2018 to June 3, 2020, and saw her many times. She diagnosed the plaintiff with recurrent major depressive disorder and ADHD.

On June 25, 2018, NP Wozniak completed a mental disorder questionnaire. She said the plaintiff has "recurrent episodes of depression, generalized anxiety symptoms and chronic ADHD which all interfere with [her] ability to function." The plaintiff's symptoms have existed since 2015, "following multiple life traumas." She has depressive symptoms of hopelessness and helplessness, low energy, and low motivation, chronic anxiety symptoms with panic episodes, and she exhibited anxiety and tearfulness during appointments. She had been prescribed Lexapro, Abilify and Adderall, and was diagnosed with recurrent major depressive disorder, generalized anxiety disorder, and ADHD. She "has impairments in concentration, attention, focus, [and] task completion," has difficulty attending to daily activities, is socially isolative, and has poor stress tolerance.[24]

On August 15, 2018, the plaintiff complained that her emotional well-being was negatively affected by increased back pain. She had been helping a family with their child transportation and plant watering.[25] On September 12, 2018, the plaintiff "expressed feeling hopelessness for a future without depression." NP Wozniak encouraged her to continue exploring her career.[26] On October

---

[22] AR 725.

[23] AR 728–29.

[24] AR 471–76.

[25] AR 591.

[26] AR 584.

10, 2018, the plaintiff had improved mood, increased motivation, and "goal directed behavior toward finding new employment." She had recently started a dog-walking job five days per week. She had also "looked into renewing her nursing license and [was] considering pursuing jobs in administration that she might be able to do beyond direct patient care."[27] In November and December 2018, the plaintiff continued to mention her dog-walking job, NP Wozniak stated the plaintiff was "strong in her recovery," and a thumb injury from possible guitar overuse was mentioned.[28] From January through March 2019, the notable updates were an emotional visit home by the plaintiff, a two-week alcohol-use relapse, and a new prescription for Strattera.[29]

On June 26, 2019, NP Wozniak said that the plaintiff had tolerated an increased dosage of Strattera, which was helping her motivation and mood.[30] Three days later, the plaintiff had continued positive improvement in mood and motivation and wanted to further increase her dosage of Strattera.[31]

On October 16, 2019, NP Wozniak described the plaintiff as stable and "considering reentering the workforce as a wound care nurse," about which she was "hopeful and optimistic." She was seeing progress on her social anxiety as a result of therapy.[32] From December 2019 through February 2020, the plaintiff described progress in renovating her studio (including refinishing her bathroom and fishing her loft) and small jobs she had taken on. She was stable on medication.[33] In March and April 2020, the plaintiff reported a benefit to her social anxiety from therapy and medication. She was stable on medications and "working toward goals of improved employment prospects." Further, she was coping well despite the COVID-19 pandemic,

---

[27] AR 573.

[28] AR 556; AR 563.

[29] AR 536; AR 539; AR 546; AR 551.

[30] AR 529.

[31] AR 531.

[32] AR 669.

[33] AR 680; AR 685; AR 695.

United States District Court
Northern District of California

"continue[d] to work small jobs outside in the garden and other gig jobs," and "remain[ed] resilient under stress."[34]

Subsequently, on May 27, 2020, the plaintiff reported increased anxiety symptoms and neuropathic pain. Cymbalta was prescribed to treat the anxiety symptoms.[35] Finally, on June 3, 2020, the plaintiff and NP Wozniak completed a therapeutic termination session due to the latter's departure from her clinic. NP Wozniak reported that the plaintiff had "responded well to treatment with Cymbalta" and her depression and anxiety were stable. Diagnoses were unchanged.[36]

### 3.  Non-Medical Evidence

The plaintiff submitted a third-party function report from her friend, Rebecca Auster, in July 2018.[37] Ms. Auster said that the plaintiff has social anxiety and "has a hard time meeting new people or being in large groups." She also doesn't sleep well due to skin itching and leg issues.[38]

Ms. Auster reported that the plaintiff's daily activities consist of walking her dog a lot, doing errands, and fixing up her place — she is "capable at all household chores and actually very handy." She goes outside daily on her own, can shop in stores in a normal manner, and has no problems handling money. As for hobbies, she enjoys singing, walking her dog, going on hikes, and sewing — but due to her health problems, "[s]he pursues her hobbies and interests much less if at all." As for social activities, she does things with others one or two times per week, at places like the dog park and the grocery store.[39]

Ms. Auster also stated that due to the plaintiff's social anxiety, "the modern average workplace and responsibilities . . . would be too much for her." Compared to her previous "lively" and "vivacious" self, she has "become markedly more anxious and distracted" and "prone to tears."

---

[34] AR 708; AR 718; AR 723.

[35] AR 731.

[36] AR 733.

[37] AR 373–81.

[38] AR 374–75.

[39] AR 376–78.

United States District Court
Northern District of California

Her disabilities also affect her ability to lift, walk, and concentrate, though she can walk for "miles" (albeit with pain) before needing to rest. She is "ok" at following written and spoken instructions. As for handling stress, "[s]he handles what she needs to" but "it's usually hard for her to manage her emotions."[40]

### 4.  Administrative Proceedings

#### 4.1. Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

At the initial level, the state doctors found the following impairments to be severe: (1) anxiety and obsessive-compulsive disorders, (2) depressive, bipolar and related disorders, and (3) trauma- and stressor-related disorders.[41] The doctors found the plaintiff to be not disabled despite these impairments.[42]

On reconsideration, the doctors added a fourth severe impairment, attention deficit/hyperactivity disorder.[43] They again found the plaintiff to be not disabled.[44]

#### 4.2. Administrative Hearing

The ALJ held a hearing on July 8, 2020. It was conducted telephonically due to the COVID-19 pandemic.[45] The plaintiff and VE Stephen Schmidt testified.[46]

---

[40] AR 373–81.

[41] AR 63.

[42] AR 70.

[43] AR 80.

[44] AR 87.

[45] AR 15.

[46] AR 32–53.

United States District Court
Northern District of California

### 4.2.1. Plaintiff's Testimony

The ALJ and the plaintiff's attorney questioned the plaintiff.[47] She testified that she was born in 1967.[48] She completed a bachelor's degree and later worked as a registered nurse, in med spas and home healthcare.[49] She last worked at PowerMD in 2015, can no longer work as a registered nurse, and can only work "[i]n a very limited fashion" because of physical issues and anxiety.[50] Her physical issues include eczema on her hands so that she has bleeding and "can barely wash [her] hands or grasp anything," itching on her arms causing bleeding, numbness and tingling in the arms causing sleep problems and causing her arms and hands to fall asleep when holding them up, and "other female issues" causing pain when wearing underwear.[51]

The plaintiff also testified that she has done odds jobs such as walking dogs, driving children to and from and school, and cleaning the apartment of an old couple every other week.[52] She has done these jobs because she is "trying to survive."[53] While doing these jobs, she can't drive for long periods because of lower back pain while sitting, and she sometimes attaches the dog leash around herself so that she doesn't have to hold it with her hands.[54] She had also been helping a woman once a week with gardening, but the work was "really hard" and she was not able to do it for eight hours per day.[55] All of these odd jobs ended due to the COVID-19 pandemic.[56]

The plaintiff also described renovating her living space. Her cousin helped to add a room, and she also refinished the bathroom and finished a loft. She was only able to do these things by doing the work over a very long time. She used her hands (with bandages on) to paint, hang up a shelf,

---

[47] AR 38–48.

[48] AR 38.

[49] AR 38–40.

[50] AR 40–41.

[51] AR 41–44, 48.

[52] AR 44, 47.

[53] AR 44.

[54] AR 44–45.

[55] AR 47.

[56] *Id.*

put plants up, clean, move stuff around, and draw designs. She did not do any "heavy labor" — her cousin and others helped with that.[57]

### 4.2.2. VE's Testimony

VE Stephen Schmidt testified at the July 8, 2020 hearing.[58] The ALJ asked the VE to classify the plaintiff's prior work according to the Dictionary of Occupational Titles, and the VE responded that the plaintiff worked as a nurse, office (light, SVP 7 for one of the plaintiff's past positions, and medium, SVP 7 for another).[59]

The ALJ posed the first hypothetical to the VE: a person of the claimant's age, education, and work experience who "can perform medium work, except: She can perform simple, routine, repetitive tasks; she can have occasional contact with supervisors, coworkers, and the general public; and she can adapt to typical stress and simple, . . . gradual changes in work settings." The VE testified that the hypothetical person could not perform the plaintiff's past work, but could perform the following jobs: (1) laborer, stores; (2) cleaner; and (3) hand packer.[60]

The ALJ posed the second hypothetical to the VE. In addition to the conditions of the previous hypothetical, the person can occasionally reach overhead and can frequently handle and finger with the bilateral upper extremities. The VE responded that the hypothetical person could perform the following jobs: (1) laborer, stores; (2) cleaner, industrial; and (3) launderer.[61]

The ALJ posed a third hypothetical to the VE: a person who can perform light work, "except: She can sit for two hours in an eight-hour day; stand and walk for . . . four hours in an eight-hour day; occasionally twist and stoop; rarely crouch and squat; occasionally climb ladders; never use her right hand or fingers; use her right arm less than 10 percent of the workday; use her left hand

---

[57] AR 45–47.

[58] AR 49–52.

[59] AR 49–50.

[60] AR 50.

[61] AR 50–51.

and fingers less than one percent of the workday; use her left arm 11 percent of the workday; and [is] absent for four days per month." The VE testified that no jobs are available to such a person.[62]

### 4.3. ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that she was not.[63]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability-onset date of April 1, 2016.[64]

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) degenerative disc disease; (2) thoracolumbar scoliosis; (3) lichen sclerosis of female genitalia; (4) psoriasis; (5) eczema; (6) major depressive disorder; (7) attention deficit hyperactivity disorder; and (8) alcohol dependence.[65]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[66]

Before reaching step four, the ALJ determined that the plaintiff had RFC "to perform medium work . . . except [that] she can occasional[ly] reach overhead with the bilateral upper extremities," "can frequently handle and finger with the bilateral upper extremities," "can perform simple routine repetitive tasks," "can have occasional contact with supervisors, coworkers, and the general public," and "can adapt to typical stress and simple, gradual changes in the work setting."[67]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[68]

---

[62] AR 51–52.

[63] AR 15–25.

[64] AR 18.

[65] *Id.*

[66] AR 18–19.

[67] AR 19–24.

[68] AR 24.

United States District Court
Northern District of California

1    At step five, the ALJ found that the following jobs were available to the plaintiff: (1) laborer,

2    stores; (2) cleaner, industrial; and (3) launderer.[69]

3    The ALJ found that the plaintiff was "capable of making a successful adjustment to other work

4    that existed in significant numbers in the national economy" and therefore concluded that the

5    plaintiff was "not disabled."[70]

### STANDARD OF REVIEW

7    Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of

8    the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set

9    aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

10   are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

11   586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than

12   a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

13   might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

14   Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the

15   [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293

16   (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a

17   different outcome, the court must defer to the ALJ's decision and may not substitute its own

18   decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not

19   reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d

20   1104, 1111 (9th Cir. 2012).

### GOVERNING LAW

22   A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

23   mental impairment which can be expected to result in death or which has lasted or can be expected

24   to last for a continuous period of not less than twelve months," and (2) the "impairment or

25   impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[69] AR 24–25.

[70] AR 25.

United States District Court
Northern District of California

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) ignoring her anxiety and obsessive-compulsive disorders at step two, (2) failing to assess the credibility of Ms. Auster's third-party testimony, (3) improperly considering the medical evidence, (4) rejecting the plaintiff's symptom testimony, and (5) improperly assessing the plaintiff's RFC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

For the reasons below, the court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further proceedings consistent with this order.

### 1.   Whether the ALJ Erred by Failing to Consider Whether the Plaintiff's Anxiety and Obsessive-Compulsive Disorders Were Severe Impairments at Step Two

The plaintiff argues that the ALJ erred by failing to mention or assess her anxiety disorder and obsessive-compulsive disorder diagnoses at step two.[71] The Commissioner responds that any such error was harmless.[72] The court agrees with the plaintiff.

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must consider the record as a whole, including evidence that both supports and detracts from his final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* § 404.1522(b). To determine the severity of a mental impairment specifically, the ALJ must consider four broad functional areas: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

"[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability

---

[71] Mot. – ECF No. 14 at 13–14.

[72] Cross-Mot. – ECF No. 20 at 9–11.

to work." *Id.* (internal quotation marks omitted) (first citing SSR 85-28; then citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

Here, the ALJ did not mention the plaintiff's anxiety disorder and obsessive-compulsive disorder diagnoses at step two.[73] This failure to explain why those disorders were not severe was error. *Lockwood v. Colvin*, No. 12-cv-00496-NJV, 2013 WL 1964923, at *7 (N.D. Cal. May 10, 2013). Furthermore, the error was not harmless, because the ALJ also failed to meaningfully assess those two disorder diagnoses at any subsequent step.[74] *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Therefore, the court remands on this ground.

## 2. Whether the ALJ Erred by Failing to Assess the Credibility of Third-Party Testimony

The plaintiff next argues that the ALJ erred by failing to assess the credibility of her friend, Rebecca Auster.[75] The Commissioner responds only that any such error was harmless.[76] The court remands on this ground.

The ALJ must consider "other source" testimony and evidence from a layperson. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). This kind of lay witness testimony "is competent evidence and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (cleaned up). Moreover, if an ALJ decides to disregard the testimony of a lay witness, the ALJ must provide "specific" reasons that are "germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (internal citations omitted). The Ninth Circuit has not "required the ALJ to discuss every

---

[73] *See* AR 18.

[74] *See, e.g.*, AR 21 ("Turning to her psychological impairments, the claimant has been diagnosed with major depressive disorder and attention deficit hyperactivity disorder.").

[75] Mot. – ECF No. 14 at 14–15.

[76] Cross-Mot. – ECF No. 20 at 27–29.

United States District Court
Northern District of California

witness's testimony on an individualized, witness-by-witness basis" — the ALJ may "point to" reasons already stated with respect to the testimony of one witness to reject similar testimony by a second witness. *Molina*, 674 F.3d at 1114.

The Commissioner points out recent district court cases finding that under the new social security regulations, there is no articulation requirement for ALJ decisions when rejecting lay witness testimony.[77] But because "[t]he Commissioner has briefed this case under the assumption that the Ninth Circuit's germane reasons case law continues to apply," the court assumes that case law does still apply.[78]

Ms. Auster's third-party function report contained lay witness testimony about the plaintiff's social anxiety. The Commissioner argues that the ALJ's error in failing to fully address that testimony was harmless because the ALJ properly rejected the plaintiff's equivalent social-anxiety testimony. *See Molina*, 674 F.3d at 1122 (because "the same evidence that the ALJ referred to in discrediting [the plaintiff's] claims also discredit[ed] [the lay witness's] claims," the ALJ's error in ignoring the lay witness's testimony was harmless). As explained below, the ALJ did not properly reject the plaintiff's own social anxiety-related testimony. Because the court remands on that ground, the court remands on this ground too.

### 3.  Whether the ALJ Erred in Considering the Medical Evidence

The plaintiff contends that the ALJ erred in considering the medical evidence by (1) failing to assess the persuasiveness NP Wozniak's opinion, and (2) rejecting NP Moreno's opinion.[79] The Commissioner counters that the ALJ properly evaluated the opinion evidence in assessing the plaintiff's ability to work.[80] The ALJ erred in considering these opinions and remand is warranted on this ground.

---

[77] Cross-Mot. – ECF No. 20 at 22 n.14 (collecting cases).

[78] *Id.*

[79] Mot. – ECF No. 14 at 16–21.

[80] Cross-Mot. – ECF No. 20 at 22–27.

1    The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving

2    ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating

3    the evidence, the ALJ must consider the entire case record, including each medical opinion in the

4    record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn v. Astrue*,

5    495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a

6    whole and may not affirm simply by isolating a specific quantum of supporting evidence.")

7    (cleaned up).

8    The Social Security Administration promulgated new regulations governing an ALJ's

9    consideration of medical opinions, effective March 27, 2017.[81] The new framework "eliminate[s]

10   the physician hierarchy, deference to specific medical opinions, and assigning weight to a medical

11   opinion," but the ALJ must still articulate how he or she considered every medical opinion and

12   how persuasive he or she finds each. *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020

13   WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (cleaned up); 20 C.F.R. § 416.920c(a)–(b).

14   Persuasiveness is now evaluated based on five factors: "1) supportability; 2) consistency; 3)

15   relationship with the claimant; 4) specialization; and 5) 'other factors.'" *V.W.*, 2020 WL 1505716,

16   at *13 (citing 20 C.F.R. § 416.920c(c)).

17   Supportability and consistency are the two most important factors, and the ALJ is required to

18   specifically address them. *Id.*; 20 C.F.R. § 416.920c(b)(2). Regarding supportability, "[t]he more

19   relevant the objective medical evidence and supporting explanations presented by a medical

20   source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

21   more persuasive the medical opinions or prior administrative medical finding(s) will be." 20

22   C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or

23   prior administrative medical finding(s) is with the evidence from other medical sources and

24   nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

25   administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

26

27

28   _____

[81] The new regulations apply here because the plaintiff filed her application after March 27, 2017.

Unlike with supportability and consistency, the ALJ is not normally required to explain how he or she considered the other factors. *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b)(2). But the ALJ is required to do so where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The parties dispute whether these standards control under the new regulations.[82] The court does not reach that issue because the motions can be resolved without reference to the Ninth Circuit's standards.

Here, the plaintiff first argues that the ALJ "did not make a finding as [to] the persuasiveness of NP Wozniak's opinions and did not evaluate their consistency or supportability."[83] The Commissioner counters that such error was harmless because "the ALJ evaluated similar, identical opinions . . . and adequately accounted for them in the RFC."[84]

The ALJ did not evaluate the persuasiveness of NP Wozniak's opinions. This was error. 20 C.F.R. § 416.920c(b); *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015) ("[A]n ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them."). And the error was not harmless because it is not "evident that the ALJ rejected [NP Wozniak's] . . . limitation[s] for the same reasons" the ALJ rejected another medical source's limitations. *Lenhart v. Astrue*, 252 F. App'x 787, 789 (9th Cir. 2007); *see also Elmore v. Colvin*, 617 F. App'x 755, 757–58 (9th Cir. 2015). Thus, remand is warranted as to NP Wozniak's opinions.

The plaintiff also argues that the ALJ improperly rejected the opinion of NP Moreno.[85] The ALJ rejected that opinion as follows:

---

[82] Mot. – ECF No. 14 at 16, 19; Cross-Mot. – ECF No. 20 at 15–21; Reply – ECF No. 21 at 4–6.

[83] Mot. – ECF No. 14 at 17.

[84] Cross-Mot. – ECF No. 20 at 25–27.

[85] Mot. – ECF No. 14 at 17–21.

> This opinion is not persuasive and is inconsistent with the record. The opinion is too extreme and is inconsistent with her ability to do medium level work, as she is able to walk dogs, garden, drive, and remodel her living space. Notably, these activities require the use of the claimant's hands, which contradicts Nurse Moreno's statement that the claimant's upper extremities were essentially unusable.[86]

This reasoning addresses only consistency, not supportability. That is, it addresses whether NP Moreno's opinion is consistent with the record as a whole, and not whether the opinion is supported by the objective medical evidence and NP Moreno's supporting explanations. It was error for the ALJ to not assess supportability. 20 C.F.R. § 416.920c(b)(2). Therefore, remand is also warranted as to NP Moreno's opinion.

### 4.   Whether the ALJ Erred by Discounting the Plaintiff's Testimony

The plaintiff also contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony about the severity of her symptoms.[87] The Commissioner counters that the ALJ properly discounted the plaintiff's testimony with specific reasons that illustrate its inconsistency with the record.[88] The court agrees with the plaintiff.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

---

[86] AR 23.

[87] Mot. – ECF 14 at 21–25.

[88] Cross-Mot. – ECF No. 20 at 11–15.

1    "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for

2    truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

3    unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

4    treatment." *Orn*, 495 F.3d at 636 (cleaned up). "[T]he ALJ must identify what testimony is not

5    credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d

6    1133, 1138 (9th Cir. 2014); *see, e.g., Morris v. Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300,

7    at *12 (N.D. Cal. Dec. 20, 2016).

8        In order to have a meaningful appellate review, the ALJ must explain its reasoning and

9    "*specifically identify* the testimony [from a claimant] she or he finds not to be credible and . . .

10   explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775

11   F.3d 1090, 1102–03 (9th Cir. 2014) ("Credibility findings must have support in the record, and

12   hackneyed language seen universally in ALJ decisions adds nothing.") (cleaned up). "That means

13   [g]eneral findings are insufficient." *Id.* at 1102; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

14   2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

15   permit the Court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").

16   Moreover, the court will "review only the reasons provided by the ALJ in the disability

17   determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759

18   F.3d at 1010.

19       First, the ALJ considered inconsistencies between the plaintiff's testimony and the objective

20   medical record. For example, the plaintiff complained of numbness and tingling in the bilateral

21   arms, painful range of motion in her shoulders and elbows, and limited range of motion in her

22   lower back. The ALJ pointed to other evidence showing "no swelling, no tenderness to palpation,

23   no deformity, no redness, normal strength, intact sensation, normal gait, normal tone, and normal

24   reflexes." The ALJ also stated that "numbness and tingling in [the] arms resolved with three

25   Advils at night."[89] But the ALJ did not explain how the evidence undermines the testimony, which

26   was error. For example, the fact that the plaintiff's sleep problems resulting from arm numbness

27   _____

28   [89] AR 20.

United States District Court
Northern District of California

and tingling resolved with three Advils at night does not mean the arm numbness and tingling had been resolved during the workday.

Second, the ALJ discounted the plaintiff's testimony based on her reported daily living activities, concluding that, "despite her impairments, the claimant can do some medium level work."[90] "[I]nconsistencies . . . between [a claimant's] testimony and [her] conduct [or] daily activities" is a legitimate factor "in weighing a claimant's credibility." *Orn*, 495 F.3d at 636; *Molina*, 674 F.3d at 1112–13 (daily living activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). Daily activities can only be relied upon by the ALJ, though, "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. "The ALJ must make specific findings relating to the daily activities and their transferability." *Id.* (cleaned up). In addition, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent" with eligibility for disability benefits; "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Garrison*, 759 F.3d at 1016; *see also Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . .").

Here, the ALJ found that the odd jobs and home-renovation work performed by the plaintiff contradicted the claimed severity of her impairments. Specifically, the claimed hand problems were contradicted by "her ability to do tasks to renovate her living space," and the claimed social anxiety problems were contradicted by "her ability to provide services to children and the elderly, as well as meet friends at the dog park."[91] The ALJ erred by not making specific findings that these activities are transferable to a work setting and that the plaintiff can spend a substantial part of her day engaged in similar activities. For example, the plaintiff testified that she completed her

---

[90] AR 21–22.

[91] AR 21–22.

home-renovation work over a long period of time, not that she spent a substantial part of her days on that work.

In sum, the ALJ's errors in discounting the plaintiff's testimony warrant remand.

### 5. Whether the ALJ Erred by Improperly Assessing the Plaintiff's RFC

The plaintiff contends that the ALJ improperly assessed her RFC because he ignored certain medical diagnoses and opinions.[92] Because the court remands for reconsideration of the medical-opinion evidence, and because the RFC was based partly on the medical record, the court remands on this ground too.

### 6. Whether the Court Should Remand for Further Proceedings or Determination of Benefits

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."). "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (cleaned up).

Here, remand is appropriate to "remedy defects in the original administrative proceeding." *Id.*

### CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: January 24, 2022

_____
LAUREL BEELER
United States Magistrate Judge

---

[92] Mot. – ECF No. 14 at 25–27.